United States Bankruptcy Court
Southern District of Texas
**ENTERED**
October 28, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO: 25-90160** |
| **SUNNOVA ENERGY** | § | |
| **INTERNATIONAL INC., *et al.*,** | § | **CHAPTER 11** |
| | § | |
| **Debtors.** | § | |
| | § | |
| **JAMIE EUGENE ORTEGA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 26-3002** |
| | § | |
| **SUNNOVA ENERGY** | § | |
| **INTERNATIONAL INC., *et al.*,** | § | |
| | § | |
| **Defendants.** | § | |

**MEMORANDUM OPINION ADDRESSING MR. ORTEGA'S AMENDED COMPLAINT AND RELATED MOTIONS (ECF NOS. 34, 44, 48, 56, 59, 60, 65, 71, 77)**

This matter comes before the Court on seven related motions: (i) the motion brought by the trustee of the Sunnova Creditor Trust (the "Creditor Trustee") on behalf of defendants Sunnova Energy Corporation ("Sunnova") and Sunnova Energy International Inc. ("SEI"), to dismiss Jamie Euguene Ortega's first amended adversary complaint (the "Amended Complaint");[1] (ii) Launch Servicing LLC's ("Launch") motion to dismiss for lack of subject matter jurisdiction;[2] (iii) the motion brought by defendants SunStrong Management LLC and SunStrong Capital Holdings LLC (together, "SunStrong") to dismiss for

[1] ECF Nos. 34, 44.
[2] ECF No. 60.

lack of subject matter jurisdiction;[3] (iv) SunStrong's motion for an extension of time to respond to the Amended Complaint;[4] (v) Mr. Ortega's motion to strike the Creditor Trustee's reply;[5] (vi) Mr. Ortega's motion for default judgment against SunStrong;[6] and (vii) Mr. Ortega's emergency motion for a temporary restraining order, a preliminary injunction, and an order compelling compliance with the rescission provisions of the Truth in Lending Act.[7]

## BACKGROUND

In August 2023, Mr. Ortega purchased a rooftop solar system for his home in Surprise, Arizona. The total purchase price of $114,857.06 was financed through Sunnova Energy Corporation under an "Easy Own Plan" retail installment contract, ID No. ZT006438051 (the "Contract"), at a rate of 3.99% over 300 months.[8] The Contract contains the notice required by the FTC's Holder Rule under 16 C.F.R. § 433.2, that any holder of the Contract "is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained with the proceeds hereof," with recovery limited to amounts paid under the Contract.[9]

Sunnova, SEI, and two affiliates (collectively, the "Debtors") filed chapter 11 petitions in June 2025. Sunnova and SEI filed on June 8, 2025 (the "Petition Date") and the cases are jointly administered. Sunnova's records show that prior to the Petition Date, the Contract was transferred to Sunnova Helios XIII Issuer LLC ("Helios XIII"), a special purpose subsidiary through which Sunnova securitized asset-backed

[3] ECF No. 71.
[4] ECF No. 65.
[5] ECF No. 56.
[6] ECF No. 59.
[7] ECF No. 77.
[8] ECF No. 34 at ¶¶ 3–4,8; ECF No. 28 at 68.
[9] ECF No. 28 at 79.

loans like Mr. Ortega's.[10] Helios XIII did not file a petition and is not included as a debtor entity in these proceedings.[11]

On July 11, 2025, the Court approved procedures and notice for the sale of substantially all of the Debtors' assets under the Bidding Procedures Order.[12] In that order, the Court approved the form of notice provided for the Sale, finding that it "reasonably calculated to provide interested parties with timely and proper notice," and that "no other or further notice of the Auction or Sale Transaction shall be required."[13] It set a deadline of July 24, 2025 to object to the Sale, providing that any party that does not object by the deadline "shall be forever barred and estopped from asserting . . . any objection" to the Sale and would be deemed to consent for purposes of § 363(f).[14] The Bidding Procedures Order also established procedures for the assumption and assignment of the Debtors' executory contracts, providing that notice of proposed cure amounts would go to the counterparties of those contracts, and that only contracts listed on the Assumption and Cure Notice schedule would be assumed or assigned.[15]

On July 31, 2025, the Court approved the sale (the "Sale") to Solaris Assets, LLC, Solaris ABS, LLC, and Solaris Borrower, LLC (collectively, the "Purchaser") under the terms provided by the asset purchase agreement (the "APA").[16] The Sale closed on September 3, 2025 (the "Closing").[17] The general bar date for filing proofs of claim was August 6, 2025.[18] The Court confirmed the Debtors' liquidating plan (the "Plan")[19] on November 10, 2025, and it became effective on

[10] ECF No. 44-1 at 3; Case No. 25-90160, ECF No. 404-1 at 129,136 (February 23, 2024 financing statements covering the loans conveyed to Helios XIII).
[11] Case No. 25-90160, ECF No. 419 at 29.
[12] Case No. 25-90160, ECF No. 419.
[13] Case No. 25-90160, ECF No. 419 at 4.
[14] Case No. 25-90160, ECF No. 419 at 9,11.
[15] Case No. 25-90160, ECF No. 419 at 17–18.
[16] Case No. 25-90160, ECF No. 599.
[17] Case No. 25-90160, ECF No. 1179 ¶ 8.
[18] Case No. 25-90160, ECF No. 436 at 3.
[19] Case No. 25-90160, ECF No. 1205 at 71.

November 14, 2025 (the "Effective Date").[20] The Plan provides for claims against the Debtors to be channeled through its claims process and vests their remaining assets in the Sunnova Creditor Trust (the "Creditor Trust"), as administered by the Creditor Trustee.[21]

On September 9, 2025, the Debtors notified Mr. Ortega that as part of the Sale, SunStrong Management LLC, a "full-service asset manager," had been retained as the servicer for his solar system "to ensure continuity of operations and customer support."[22] Launch Servicing LLC partnered with SunStrong to handle the billing and payment processing associated with these customer accounts.[23]

After the Closing, two separate charges in the amount of $623.70 each, totaling to $1,247.40, were drawn from Mr. Ortega's bank account – the first on September 9, 2025, and the second on October 8, 2025. Mr. Ortega's bank account associated these charges with "SUNNOVA SOLAR."[24] SunStrong issued Mr. Ortega billing statements on November 5, 2025 and November 17, 2025, both of which characterize Launch Servicing, LLC as "a debt collector attempting to collect a debt." Additionally, the November 5 statement identifies SunStrong Capital Holdings, LLC as the "fund owner" of Mr. Ortega's loan, while the November 17 statement identifies SunStrong Capital Holdings, LLC as the "original fund owner," and "Sunnova AP6 Warehouse II, LLC" as the "fund owner."[25]

Six additional withdrawals were attempted between November 12, 2025 and May 6, 2026.[26] On May 19, 2026, Mr. Ortega mailed SunStrong and Launch a notice of recission under the Truth in Lending Act. SunStrong replied, stating that any issues must be "directed

[20] Case No. 25-90160, ECF No. 1235.
[21] Case No 25-90160, ECF No. 1205 at 130, 134–35.
[22] ECF No. 28 at 26.
[23] ECF No. 28 at 30; ECF No. 77 at 2.
[24] ECF No. 1-1 at 6,7.
[25] ECF No. 28 at 30–33.
[26] ECF No. 59-2 at 2–7.

through Sunnova's bankruptcy estate."[27] On June 1, 2026, four days after their reply, Mr. Ortega's solar system was remotely shut off by the "system maintainer," and has produced no electricity since.[28]

Mr. Ortega commenced this adversary proceeding (the "Adversary Proceeding") on January 5, 2026, and filed the Amended Complaint on May 15, 2026. The Amended Complaint added the Creditor Trustee, SunStrong, and Launch as defendants.[29] It listed ten counts, mostly under Arizona and federal consumer-protection statutes. More specifically, Mr. Ortega sought relief in the form of rescission under the TILA and Regulation Z, actual and statutory damages, injunctions against further collection on the Contract and credit reporting, a declaration that the § 363 sale was void as to his consumer rights, and a declaration that the assignment of the Contract is void because he was not cured in accordance with § 365.[30]

SunStrong, served by mail on May 21, 2026, did not respond to the Amended Complaint by the deadline.[31] Mr. Ortega asked the Clerk to enter SunStrong's default on June 22, 2026, and moved for a default judgment on July 21, 2026.[32] SunStrong filed a motion to extend their time to respond to Mr. Ortega's Amended Complaint on August 3, 2026.[33] Counsel for SunStrong appeared at the hearing the next day on August 4, 2026.[34] SunStrong filed a motion to dismiss the Amended Complaint for lack of subject matter jurisdiction on August 14, 2026.[35]

The Court held two additional hearings on the motions – one on September 16, 2026, and another on September 23, 2026.[36] During the September 16 hearing, the Court noted that SunStrong's May 28, 2026

---

[27] ECF No. 77 ¶¶ 7–8; ECF No. 49 at 31.
[28] ECF No. 59-2 at 1.
[29] ECF Nos. 1, 34.
[30] ECF No. 34 ¶¶ 19–44.
[31] ECF Nos. 39, 40.
[32] ECF Nos. 48, 59.
[33] ECF No. 65.
[34] ECF No. 67.
[35] ECF No. 71.
[36] ECF Nos. 80, 82.

email had directed Mr. Ortega to pursue his TILA claims through the bankruptcy, while the Creditor Trustee maintained that the Trust had sold everything and held nothing to which such a claim could attach. The Court asked counsel to reconcile those positions and to identify the entity that holds the Contract and that should receive any TILA rescission notice.[37]

During the September 23 hearing, counsel for the Creditor Trustee represented that the solar system at Mr. Ortega's residence, the Contract, and the equity of the entity holding it were all sold to the Purchaser, which uses SunStrong to administer the loans it acquired, and that nothing relating to them was retained by the Debtors, the estates, or the Creditor Trust. While counsel for SunStrong agreed that the Contract no longer belongs to the Debtors, it could say only that it belongs to "SunStrong and/or Solaris" and that a rescission notice would need to go to one or the other. Neither party's counsel identified the holder of Mr. Ortega's Contract. Counsel for the Creditor Trustee also stated that the Trust cannot trace the two post-petition debits among the Debtors' bank accounts, but that it would not object to an administrative claim in their total amount.[38]

## JURISDICTION

28 U.S.C. § 1334(b) provides district courts with jurisdiction over this proceeding. 28 U.S.C. § 157(b)(1) states that "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title." This proceeding has been referred to this Court under General Order 2012-6 (May 24, 2012). This Court has jurisdiction over the claims against Sunnova, SEI, and the Creditor Trustee, the allowance of the administrative claim, and the enforcement of the Court's sale and

[37] ECF No. 80.
[38] ECF No. 82.

confirmation orders, as they are core matters which the Court may consider under 28 U.S.C. § 157(b)(2)(A), (B), (N), and (O). Whether the Court has jurisdiction over the claims against SunStrong and Launch is addressed in Part II of this opinion. The Court has constitutional authority to enter final orders and judgments. *Stern v. Marshall*, 564 U.S. 462, 486–87 (2011). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## LEGAL STANDARD

The motions to dismiss are governed by Rules 12(b)(1) and 12(b)(6) as applied through Bankruptcy Rule 7012. The party invoking jurisdiction must establish it, and the Court may look beyond the pleadings to undisputed facts in the record. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In applying this standard, courts accept well-pleaded facts as true; legal conclusions are not entitled to the same presumption. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pro se pleadings are construed liberally. *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).

## DISCUSSION

Three central issues control the outcome of this proceeding: (i) the effect of the § 363 Sale on Mr. Ortega's rights under the Contract; (ii) the Court's authority to hear the claims against the non-debtors; and (iii) the treatment of Mr. Ortega's claims against the Debtors. The Court will discuss each in turn.

The Court will also address the unanswered question of ownership regarding Mr. Ortega's Contract, which is to be resolved through the procedure laid out in the Conclusion.

### I. THE EFFECT OF THE SALE ON THE CONTRACT.

Mr. Ortega's due process claim (Count X), his request for declarations concerning the effect of the Sale (Count IX(f)–(g)), and most

of his arguments presented during the hearings rest on the premise that the Sale transferred his Contract free and clear without providing him with proper notice. This is not the case.

The Contract was not in Debtors' possession at the time of filing. As a result, it was never included in the Debtors' estate and could not be included in the § 363 Sale. Because it was not included in the Sale, Mr. Ortega's claims and defenses under the Contract are unaffected. The Sale Order is final either way, because Mr. Ortega received adequate notice.

### A. Mr. Ortega's Claims and Defenses Are Unaffected by the Sale.

Sunnova Energy Corporation originated the Contract in August of 2023 and transferred it to Helios XIII prior to the Petition Date. This fact is not contested and is consistent with Mr. Ortega's pleadings as well as Sunnova's records.[39] Helios XIII did not file a petition; as such, it is a non-debtor entity in these proceedings. The holdings of a non-debtor entity are not included in its parent company's property of the estate. 11 U.S.C. § 541(a)(1); see *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003). It follows that the Contract was never property of the Debtors' estate.

The Sale did not change anything. The Debtors sold their business to the Purchaser. The purchase included the equity in Sunnova's servicing subsidiaries as well as the equity in Sunnova Solstice Holdings, LLC, a holding company at the top of the corporate structure that includes Helios XIII.[40] The Sale Order barred the Purchaser from directly acquiring any assets or equity of Solstice Holdings' subsidiaries.[41] As a result, the Contract itself never changed hands. It stayed with Helios XIII, which simply acquired a new ultimate owner.

---

[39] ECF No. 34 ¶ 9; Case No. 25-90160, ECF No. 1161 ¶ 5.
[40] Case No. 25-90160, ECF No. 238-1 at 7–8; ECF No. 404-1 at 47–52.
[41] Case No. 25-90160, ECF No. 599 at ¶ 6,11.

Because the Sale did not transfer the Contract, it was never held by the Debtors' estate. Therefore, it was not transferred free and clear of Mr. Ortega's interest, and his claims and defenses are unaffected. Even if the Contract had been transferred in the Sale, the result would be the same. The Bidding Procedures Order explicitly provides that, "[n]otwithstanding section 363(f)," a purchaser of an interest in a consumer credit contract "shall remain subject to the same claims and defenses" as it would if the purchase was made outside of bankruptcy.[42] Furthermore, the Contract's own Holder notice subjects every holder to the same claims and defenses that could have been asserted against a seller.[43] 16 C.F.R. § 433.2.

SunStrong's statement that any Truth in Lending issue "must be directed through Sunnova's bankruptcy estate"[44] does not change that result. Nothing in the Bidding Procedures Order, the Sale Order, the Plan, or the Confirmation Order requires that any of Mr. Ortega's claims or defenses be brought through the bankruptcy. For the sake of clarity, the Court finds that whatever claims and defenses Mr. Ortega had before the Sale with respect to the Contract remain untouched. This resolves Count IX(f)–(g).

This is where this Court's role with respect to those claims ends, however. Questions of whether the Contract qualifies for rescission, whether the May 19, 2026 notice was effective, and any other questions relating to the merits or adjudication of these claims are not for this Court to answer, as discussed in Part II of this opinion below.

**B. Identifying the Holder of Mr. Ortega's Contract.**

Although it is established that Mr. Ortega's claims and defenses under the Contract are unaffected, the identity of the Contract's current holder remains in question. The Court asked the Defendants to identify the specific entity that holds the Contract at the last two hearings. No

[42] Case No. 25-90160, ECF No. 419 at ¶ 33; ECF No. 599 ¶ 70.
[43] ECF No. 28 at 79.
[44] ECF No. 49 at 28.

party provided a satisfactory answer, and the record does not provide much clarity.

Sunnova's own records indicate the holder is Helios XIII, the same Sunnova subsidiary that held the Contract at the time of filing. However, later statements from SunStrong indicate that the current holder is Sunnova AP6 Warehouse II LLC, another non-debtor Sunnova entity.[45] Because each potential owner of Mr. Ortega's Contract is a non-debtor outside of this Court's reach, it is not necessary to choose between them to rule on the motions pending before it today.

Nonetheless, the Court strongly empathizes with Mr. Ortega's frustrations. The issues before the Court are not a mystery of Mr. Ortega's making. Mr. Ortega has been sent in circles for over a year, being met only with vague deflections in response to his concerns. Rather than providing a direct answer during the hearings as requested, the parties elected not to do so. He is entitled to a definitive answer.

Paragraph 68 of the Sale Order obligates the Purchaser to provide "any trustee or estate representative appointed in these chapter 11 cases" access to the books and records of the acquired entities and "reasonable assistance, support and cooperation" with the wind-down, including "reconciliation of claims."[46] Although this Court does not have jurisdiction to oversee non-debtor claims, it does have jurisdiction to enforce the Sale Order and its provisions. The Court exercises this authority and directs the identification of the current holder of Mr. Ortega's Contract through the procedure set forth in the Conclusion.

### C. Mr. Ortega Received Adequate Notice.

In Count X of his complaint, Mr. Ortega argues that the Court should render the § 363 Sale void to the extent it affected his interests,

---

[45] Sunnova AP6 Warehouse II LLC is not among the entities whose equity was sold; it is listed as a non-debtor "Seller" on the APA's balance sheet schedule. (ECF No. 404-1 at 61; ECF No. 28 at 33, 35). If the Contract was held by that entity at the Closing, it would have passed to Solaris Assets by contract as a non-debtor Seller's asset. (Case No. 25-90160, ECF No. 238-1 at 8; ECF No. 599 ¶ 11).

[46] Case No. 25-90160, ECF No. 599 ¶ 68.

as he was not given proper notice in violation his due process rights. The first inquiry in a due process challenge is whether the plaintiff has been deprived of a protected interest. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40,59 (1999).

As the Court has established, the Sale deprived Mr. Ortega of nothing. His Contract was not sold, so his claims and defenses survived. The only claim of Mr. Ortega's that was affected by the bankruptcy at all was his claim against Sunnova Energy Corporation for conduct occurring in 2023, which he admits receiving notice of, and is addressed in Part III of this opinion.[47] This is enough to dispose of Count X. However, for the avoidance of doubt, the Court will briefly address the notice issue on its own merits.

Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to raise their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). The Sale's notice procedures were approved under the Bidding Procedures Order and were deemed to be reasonably calculated under all the circumstances, especially considering the scale of the business and its hundreds of thousands of customers.[48] More importantly, Mr. Ortega's own exhibits show that he knew of the Sale. Sunnova sent Mr. Ortega an email that it was filing chapter 11 the day after petitioning; the claims agent emailed him the bar date notice on July 17, 2025; and Sunnova emailed him again on July 31 informing him of the Court's approval of the Sale. Mr. Ortega sent an email to the claims agent on August 11, three days before the deadline to appeal the Sale Order, with an "objection" that opposed the assignment of his Contract under 365(b). His Contract was in fact not assigned, and he received full notice of the bankruptcy and the Sale in any event. Although he sent an objection to

[47] ECF No. 34 ¶ 42.
[48] Case No. 25-90160, ECF No. 713 at 1–2.

the claims agent, he did not file anything with this Court before the Claims Bar Date.

Therefore, the Sale Order is final, and Count X of Mr. Ortega's complaint is dismissed.

## II. Claims Against the Non-Debtors.

Five of the seven motions before the Court concern SunStrong and Launch – non-debtor defendants. These include both of their motions to dismiss for lack of subject-matter jurisdiction, Mr. Ortega's motions for default judgment and emergency injunctive relief against SunStrong, and SunStrong's motion for an extension of time. All five of these motions hinge on whether this Court has the authority to hear Mr. Ortega's claims against the non-debtors to begin with. It does not.

### A. This Court Lacks Jurisdiction Over Claims Against SunStrong and Launch.

Section 1334(b) gives this Court, through the district court, jurisdiction over civil proceedings "arising under" the Bankruptcy Code, "arising in" a bankruptcy case, or "related to" one. 28 U.S.C. § 1334(b); 28 U.S.C. § 157(a). Mr. Ortega's claims against SunStrong and Launch arise under federal consumer statutes and Arizona law and exist independently of these bankruptcy proceedings. As such, the Court's only potential basis for jurisdiction over these claims would be under a "related to" theory. A proceeding is "related to" a bankruptcy case when its outcome "could conceivably have any effect on the estate being administered in bankruptcy." *Wood v. Wood (In re Wood)*, 825 F.2d 90,93 (5th Cir. 1987). For claims arising after confirmation, the inquiry narrows to matters "pertaining to the implementation or execution of the plan." *Bank of La. v. Craig's Stores of Tex., Inc.* (*In re Craig's Stores of Tex., Inc.)*, 266 F.3d 388, 390-91 (5th Cir. 2001).

Neither of these standards is met here, so the Court need not decide which should apply. SunStrong and Launch are not Debtors, Sellers, Purchasers, parties to the Plan or to the Trust, and at no point did the Debtors' estate ever hold Mr. Ortega's Contract. Every action

that Mr. Ortega attributes to them, including the handling of his rescission notice, the continued credit reporting, and the shutdown of his solar system, happened after the Sale closed, mostly after the Effective Date.[49] It follows that regardless of the outcome of these claims, none would affect the implementation or execution of the Plan, and they would have no effect on the recovery of any creditor. To the extent that the broader, "conceivably have any effect," standard applies to alleged pre-confirmation conduct, the result is the same. A judgment against the servicers for their own conduct, or against the holder of the Contract under the Holder Rule, impacts only those entities, drawing nothing from the estate, and leaving creditor recovery unaffected.

Further, Mr. Ortega's reliance on the Sale Order's retention of jurisdiction provision is misplaced.[50] That clause allows the Court to interpret and enforce its own order. However, it does not allow the Court to extend its own jurisdictional reach, which is "grounded in, and limited by statute." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995). His reliance on § 363(o) also fails. Section 363(o) states which claims survive a sale; it has no bearing on jurisdiction and does not automatically provide a bankruptcy court authority to hear such claims.

Therefore, the motions to dismiss for lack of subject matter jurisdiction are granted, and the claims against SunStrong and Launch are dismissed without prejudice.

### B. There Can Be No Default Judgment or Injunction Without Jurisdiction.

A court must satisfy itself of its subject matter jurisdiction before entering a default judgment. FED R. CIV. P. 60(b)(4). Jurisdiction may be raised at any time, and the Court must consider it independently. FED. R. CIV. P. 12(h)(3). As a result, SunStrong's failure to respond does not prevent the Court from considering its jurisdictional challenge.

---

[49] ECF No. 34 ¶¶ 6, 27–29, 33, 35.
[50] Case No. 25-90160, ECF No. 599 ¶¶ 30,72.

Because the Court lacks jurisdiction over the claims against SunStrong, the request for entry of default[51] and the motion for default judgment are denied.[52] SunStrong's motion for an extension of time[53] is granted, and its motion to dismiss is treated as timely. A court must consider a challenge to its subject matter jurisdiction whenever it is raised, so the timing of SunStrong's response would not have changed this result.

For the same reason, the emergency motion for an injunction[54] is denied. An injunction requires a substantial likelihood of success on the merits. *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009). This cannot be shown on a claim which this Court has no authority to rule on.

## III. Claims Against the Debtors.

The Creditor Trustee, on behalf of the Debtors and the Trust, moves to dismiss every count alleged by Mr. Ortega.[55] Counts I, II, III, VII, and VIII arise from conduct related to the origination of the Contract in 2023. They allege that the salesperson misrepresented its terms, that the Truth in Lending disclosures were deficient, that the Contract is unconscionable, and that Mr. Ortega has the right to rescind. Counts IV, V, VI, and IX arise from collections and reporting on the loan after Mr. Ortega disputed it in July 2025. The first group of claims is treated under the provisions of the Plan. The second group states no claim against the Debtors or the Creditor Trustee except for the two post-petition charges at issue in Count V, which the Court allows as an administrative claim. Subparts (f) and (g) of Count IX, which concern the effect of the Sale, are resolved in Part I.

### A. Pre-petition Claims Proceed Through the Bankruptcy Claims Allowance Process.

[51] ECF No. 48.
[52] ECF No. 59.
[53] ECF No. 65.
[54] ECF No. 77.
[55] ECF No. 44.

Whatever their merits may be, Counts I, II, III, VII, and VIII of Mr. Ortega's Amended Complaint are claims against Sunnova for conduct that occurred in relation to the formation of the Contract in August 2023. For bankruptcy purposes, a claim arises at the same time as the conduct it relates to occurred, assuming a pre-petition relationship with the debtor existed. *Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, (5th Cir. 1994). As such, each of the claims Mr. Ortega brings in these Counts arose nearly two years before the petition date.

A confirmed plan binds every creditor, regardless of whether the creditor accepted it. 11 U.S.C. § 1141(a). Under the Plan, pre-petition unsecured claims are to be treated through the claims process, in which assets from the Creditor Trust are distributed amongst these claims on a pro-rata basis. Any favorable judgment made with respect to Mr. Ortega's pre-petition claims in this adversary proceeding would subvert the Plan's distribution process and put him ahead of every other unsecured creditor. Although Mr. Ortega has a proof of claim on file, it was filed three months after the Claims Bar Date. If Mr. Ortega would like to pursue a distribution on these claims, he must move for leave to file a late claim under Bankruptcy Rule 9006(b)(1) in the main case docket.

Counts I, II, III, VII, and VIII of Mr. Ortega's Amended Complaint are therefore dismissed as to Sunnova, SEI, and the Creditor Trustee.

### B. The Collection Counts State No Claim Against the Debtors or the Creditor Trustee.

Counts IV, VI, and IX concern the collection and reporting of the loan. The Amended Complaint attributes these claims to SunStrong and Launch only, and it seeks declarations about a Contract and servicers in which the Debtors have no interest.[56] Its occasional reference to "Defendants" does not constitute a claim against the Debtors, and nothing in these counts is alleged against the Creditor Trustee.

[56] ECF No. 34 ¶¶ 6,27–29, 33, 39–40.

Therefore, Counts IV, VI, and the remainder of IX are dismissed as to Sunnova, SEI, and the Creditor Trustee.

### C. Mr. Ortega's $1,247.40 Claim is Allowed as an Administrative Claim.

Mr. Ortega disputes two post-petition charges, totaling to $1,247.40, which he says were processed after he revoked his authorization.[57] The Trustee has stated they cannot determine which of the hundreds of accounts in Sunnova's cash management system received this money, and that the cost to find out would exceed the claim itself. However, they have agreed to the allowance of an administrative claim in that amount.

A post-petition obligation of a debtor-in-possession, including one arising from the estate's receipt of funds to which it was not entitled, is an administrative expense. 11 U.S.C. § 503(b)(1)(A). The Court makes no finding as to which entity received the funds. The Plan's requirement that administrative claims be requested within thirty days after the Effective Date or otherwise be "forever barred" does not prevent this allowance, as the Plan itself provides that a late request may be allowed by a Final Order.[58]

Mr. Ortega's claim is therefore allowed as an administrative expense in the amount of $1.247.40, to be paid by the Creditor Trust within thirty days after the order is entered. This allowance satisfies Count V as to the Debtors and the Creditor Trustee, and Count V is otherwise dismissed as to them.

## CONCLUSION

For the reasons stated, the Court GRANTS motions (i) through (iv), DENIES motions (v) through (vii), and allows Mr. Ortega an administrative claim of $1,247.40.

---

[57] ECF No. 1-1 at 6–7.
[58] Case No. 25-90160, ECF No. 1205 at 79.

The Court also directs the Creditor Trustee to request from the Purchaser, and to file within twenty-one days, a statement identifying (i) the holder of record of Mr. Ortega's Contract (No. ZT006438051); (ii) the secured party of record on any financing statement filed against the solar system; and (iii) the entity, along with the proper mailing address, to which notices under the Contract (including any notice of rescission under 15 U.S.C. § 1635) are to be sent.

Alternatively, SunStrong may file the statement itself, provided its contents meet the requirements listed above. Any statement filed is to be served directly and promptly to Mr. Ortega. After the statement is filed, the Court will consider what further proceedings are appropriate, if any.

SIGNED 10/28/2026

Alfredo R Pérez
United States Bankruptcy Judge